GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
VINCENT J. SOTTOSANTI
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: vincent.sottosanti@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>    vs.<br><br>Amber Ortega,<br><br>              Defendants. | Mag. No. 4:20-mj-08904 (LAB)<br><br>MOTION IN LIMINE<br><br>(Government's Motion to Preclude Any Defense Under the Religious Freedom Reformation Act) |

The United States of America, by and through its undersigned attorneys, hereby requests the Court preclude the defendant from presenting any defense under the Religious Freedom Restoration Act (RFRA) because the defendant cannot establish a prima facie case, and the government has chosen the least restrictive means to fulfill its compelling interests. In addition, the defendants are not entitled to an evidentiary hearing.

**I.    Factual Summary**

The Organ Pipe Cactus National Monument ("the park") is a U.S. national monument spanning 517 square miles in Southern Arizona. The park extends from the

U.S./Mexico border north towards Why, AZ, and is bordered on the northwest by the Cabeza Prieta National Wildlife Refuge, and to the east by the Tohono O'Odham Indian Reservation.West Border Road runs east/west along the southern edge of the park along the U.S. side of the border. (Exhibit A).  From October 9, 2019, through September 9, 2020, West Border Road was subject to heavy construction traffic and activity related to border infrastructure.  This traffic included large construction vehicles and equipment.

On October 9, 2019, the park's Superintendent issued a temporary closure order pursuant to § 36 CFR 1.5(a)(1) for a small portion of the park which included West Border Road.  (Exhibit B).  Specifically, the following areas were closed:

- West Border Road (Roosevelt Reservation) from Monument Hill west to Quitobaquito Springs; and,

- All crossover roads that connect South Puerto Blanco Drive to the West Border Road.

*Id.*  The closure was in response to public safety concerns associated with border infrastructure construction activity.  *Id.*

On September 9, 2020, National Park Service (NPS) officers working within the boundaries of the park were advised that construction crew members reported two individuals were sitting on or in heavy construction equipment in an area of West Border Road which was subject to the closure order.  U.S. Border Patrol Agents and U.S. Park Rangers responded to the area and observed Nellie David sitting on the bucket of a front-end loader that was parked on West Border Road.  The Park Rangers observed the

defendant standing approximately 30 yards away near the United States/Mexico border. Park Rangers approached the defendant and made several attempts to communicate to her that the area was closed and she needed to leave. Park Rangers also explained to Ortega that if she refused to leave the area they would have to arrest her. Ortega refused leave the area and was arrested[1] for violations of 36 C.F.R. § 2.32(a)(2) (Interfering with Agency Functions); and, 36 C.F.R. § 1.5 (Violation of Closures and Public Use Limits).

## II. Legal Summary

### a. Statutory Background of RFRA

In 1990, the United States Supreme Court upheld the state of Oregon's refusal to give unemployment benefits to two Native Americans fired from their jobs after testing positive for using peyote, an illegal substance, in a religious ceremony. *Employment Division v. Smith*, 494 U.S. 872 (1990). In response, Congress passed the Religious Freedom Restoration Act (RFRA) of 1993, codified as 42 U.S.C. § 2000bb, to reinstate the "*Sherbert* Test," which mandated strict scrutiny be used when determining if the Free Exercise Clause of the First Amendment has been violated. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015).

### b. *Prima Facie* Case

To establish a prima facie RFRA claim, a defendant must present evidence that (1) the defendant's activities were an "exercise of religion," and (2) the government action "substantially burdened" the defendant's exercise of religion. 42 U.S.C. § 2000bb-1(a);

---

[1] Nellie was also arrested and her case has been adjudicated.

*Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008).

To do this she must first articulate the scope of her beliefs, and then show that her beliefs are religious in nature, that they are sincerely held, and that the exercise of her sincerely held beliefs is substantially burdened by a government action. *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007). The sincerity and full scope of a claimant's asserted beliefs should be scrutinized. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014); *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *Zimmerman*, 514 F.3d at 854; *Guam v. Guerrero*, 290 F.3d 1210, 1222-23 (9th Cir. 2002). However, the reasonableness or validity of a claimant's beliefs may not be subject to scrutiny. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2779; see also *Bauer*, 84 F.3d at 1559. "Exercise of religion" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (incorporating by reference 42 U.S.C. § 2000cc-5(7)(A)).

To establish that a government action constitutes a substantial burden on a claimant's sincerely held religious belief, a claimant must show either (1) that he or she was forced to choose between following his or her sincerely held religious beliefs or receiving a government benefit, or (2) that he or she was coerced to act contrary to his or her sincerely held religious beliefs by the threat of criminal or civil sanctions. *Snoqualmie Indian Tribe v. F.E.R.C.,* 545 F.3d 1207, 1214 (9th Cir. 2008) (quoting *Navajo Nation*, 535 F.3d at 1070).

////

### c. Strict Scrutiny

Only once a defendant has established both elements of a prima facia claim does the burden shift to the government to demonstrate that the "substantial burden" posed by the government action is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of furthering that compelling governmental interest. *Navajo Nation*, 535 F.3d at 1068 (citing 42 U.S.C. § 2000bb–1(b)). To demonstrate that the government's action is in furtherance of a compelling interest, the government must demonstrate that the "application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burdened" furthers a compelling interest. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006). Put another way, the government's action is in furtherance of a compelling interest if demanding "unbending compliance" advances its stated interest to a "meaningful degree." *United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016).

In determining whether an interest is compelling as to a particular claimant, courts look to whether analogous exceptions to the challenged statute already exist and to the particularity with which the interest is alleged. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2779; *O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. at 432. If the government identifies a compelling interest with particularity, then it must still demonstrate that no less restrictive means of furthering its interest exists. 42 U.S.C. § 2000bb-1(b)(2). Stated another way, the government must demonstrate that it cannot accommodate the claimant's belief more without furthering its interest less. *Christie*, 825 F.3d at 1056. To do this, the government must demonstrate that its preferred means are reasonable and that

any other proffered options are either not less restrictive or not plausible. *Id*. at 1061.

### III. Discussion

####  a. The defendant cannot establish a *prima facie case.*

##### i. The defendant can not show that she was "exercising" her religion at the time she was arrested.

As an initial matter, the defendant must show that her stated beliefs are religious in nature and sincerely held. *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007). At trial, the defendant will have to provide testimony as to her personal and sincerely held religious beliefs. Assuming the defendant can establish that she has sincerely held religious beliefs, next she will have to show that the conduct for which she was arrested was an exercise of her religion. In this case, the defendant was arrested for violating the October 2019 closure order. It is unclear at this point how violating a closure order would have been an exercise of defendant's religion. Nor is it clear that she was exercising her religious beliefs when she was arrested for violating the closure order. Defendant would have to show that her "presence" in the closed area was the exercise of her sincerely held religious beliefs.

##### ii. The government's actions did not "substantially burden" the defendant's exercise of her religion.

Finally, the defendant has to show that the government action did "substantially burden" the defendant's exercise of her religion. The defendant's argument is meritless because, first, the government's choice of how to use its own land cannot legally create a substantial burden on the free exercise of an individual's sincerely held religious beliefs. Second, even if the government's regulations regarding access to and use of its own land

could create a substantial burden, the defendant would have to show that her stated beliefs are in conflict with the regulations she is charged with violating.

Any argument the defendant has that the enforcement of the federal crimes against her violate her rights under the RFRA is foreclosed by clearly established precedent in *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-73 (9th Cir. 2008). The right to the free exercise of religion does not provide religious adherents the right to dictate the government's use of its own land or resources. *Id.* at 1073 (holding that the movants "cannot dictate the decisions that the government makes in managing what is, after all, its land") (*citing Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 453 (1988)) (emphasis in original). The government may, consistent with RFRA and the Constitution, regulate and administer its own land in such a way that "decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion," *Navajo Nation*, 535 F.3d at 1063, even if the government's actions would "virtually destroy" the believer's ability to practice his or her religion. *Lyng*, 485 U.S. at 451. To hold otherwise would give each citizen "an individual veto to prohibit the government action solely because it offends his religious beliefs, sensibilities, or tastes, or fails to satisfy his religious desires" and "would deprive others of the right to use what is, by definition, land that belongs to everyone." *Navajo Nation*, 535 F.3d at 1063-64.

Where, as here, there is no showing the government has coerced the defendant to act contrary to her religious beliefs under the threat of sanctions there is no "substantial burden" on the exercise of her religion. *Navajo Nation,* 535 F.3d 1058 at 1063 (9th Cir. 2008). Since the closure order relates to the government's enforcement of its regulations

governing its own land and a temporary closing of a small portion of the park has not coerced the defendant to act contrary to her religious beliefs, the defendant cannot establish any violation of her rights under the RFRA.

      **b. The United States has chosen the least restrictive means to fulfill its compelling interest.**

           **i. The government's prosecution of the defendant for the offenses alleged in the Complaint furthers its compelling interests.**

The defendant cannot meet the elements of her *prima facie* claim. However, assuming, *in arguendo*, that she could even meet those elements, the burden would shift to the government to show that it has chosen the least restrictive means to fulfill its compelling interest. In this case, the government has a compelling interest in assuring the safety of the public through enforcement of the temporary closure order in this limited area. During the time period covered by the October 2019 closure order, West Border Road was subject to heavy construction traffic and activities including large machinery and vehicles. The traffic and construction activity created dangerous conditions on West Border Road. The defendant's presence in violation of the closure order created a danger to herself and others.

           **ii. The prosecution of the defendant in this matter is a reasonable method to advance the government's compelling interests, and no less restrictive means exist.**

The prosecution in this case is a reasonable method for the government to advance its compelling interests in protecting the public from the dangers inherent in an area of heavy construction activities and traffic. There is no less restrictive means. The closure order covered only the portion of West Border Road that was subject to the heavy construction. With the exception of a portion of West Border Road, the entire 517 square

miles of the Organ Pipe Cactus National Monument was open to the public.

**IV.    Conclusion**

The defendant cannot establish a *prima facia* case that the government's enforcement of the West Border Road closure order imposed a substantial burden on the exercise of her religion. Even if the defendant could establish a *prima facie* case, the government has a compelling interest in promoting public safety and no less restrictive means were available to ensure compliance with the closure order.

For these reasons, the government respectfully requests this Court preclude the defendant from asserting a defense under the Religious Freedom Reformation Act.

Respectfully submitted this 26th day of August, 2021.

> GLENN B. McCORMICK
> Acting United States Attorney
> District of Arizona
>
> */s Vincent J. Sottosanti*
>
> VINCENT J. SOTTOSANTI
> Assistant U.S. Attorney

Copy of the foregoing served electronically
or by other means this 26th day of August, 2021, to:

All ECF participants