Paul Gattone
State Bar #012482
LAW OFFICE OF PAUL GATTONE
301 S. Convent
Tucson, AZ 85701
(520) 623-1922
gattonecivilrightslaw@gmail.com

Counsel for Defendant

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR20-mj-08904-NA-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **TRIAL BRIEF** |
| Amber Ortega | ) | |
| Defendant, | ) | |
| | ) | |

Defendant, through Counsel undersigned, files the following Trial Brief in connection with the above numbered matter..

**INTRODUCTION**

Congress enacted the Religious Freedom Restoration Act (RFRA) in 1993 in response to the Supreme Court's holding in Employment Division v. Smith, 494 U.S. 872 (1990), that the Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." Id. at 879 (internal quotation marks omitted). With RFRA, Congress sought "to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972)," that had been altered by the Court in Smith. 42 U.S.C. § 2000(b)(1). By reinstating as a statutory matter the pre-Smith free

exercise standard, Congress recognized that laws of general applicability may, in some cases, impose a substantial burden on the religious exercise of some persons. Congress required that in circumstances where religious exercise is substantially burdened by state action, the government must justify such burden as furthering a compelling interest through narrowly tailored means. The Supreme Court affirmed this interpretation of the reach of RFRA in Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424 (2006) ("the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability.'") (quoting 42 U.S.C. § 2000bb–1(a)). RFRA aims to provide substantial protection to the free exercise of religion while recognizing that this right is not absolute, insofar as it must yield where necessary to allow the government to implement a compelling public interest, or where the rights of third parties, for instance other citizens, are burdened by the overly solicitous accommodation of a person's religious belief. Further, the First Amendment's Establishment Clause imposes a limit on the extent to which the government may accommodate the religious beliefs of citizens, as the government must ensure that an "accommodation [is] measured so that it does not override other significant interests" and does not "differentiate among bona fide faiths." Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005).

Through a process of strict judicial review, RFRA creates the possibility of discrete religious exemptions to parties whose religious activities are constrained by neutral laws of general applicability. To receive an exemption under RFRA, a claimant need not demonstrate that the challenged law or policy singles out any particular group for special harm—such a law would be unconstitutional under the Free Exercise and Establishment Clauses of the First Amendment, making a RFRA exemption unnecessary. See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508

U.S. 520, 534 (1993). Nor need a defendant show that he or she believes the challenged law cannot exist at all. RFRA is not a means of challenging the application of a law or policy generally, but of challenging a particular enforcement of federal law to the extent that it conflicts with a particular person's specific religious practices.

Under RFRA, the federal government may not "substantially burden" a person's religious exercise, even where the burden results from a religiously neutral, generally applicable law that might be constitutionally valid under Smith, unless the imposition of such a burden is the least restrictive means of accomplishing a compelling governmental interest. The person claiming a RFRA defense must show (i) that he or she holds a belief that is religious in nature; (ii) that that belief is sincerely held; and (iii) that his or her exercise of religious belief is substantially burdened by a federal law or policy. Once the person claiming a RFRA defense has made out this showing, the burden shifts to the government to show that (i) enforcement of the law in this case advances a compelling governmental interest; and (ii) that interest is being accomplished through the means least restrictive to the claimant's religious exercise. 42 U. S. C. §§ 2000bb– 1(a), (b).

In assessing the merits of a RFRA claim, whether raised affirmatively to enjoin enforcement of a federal law or policy, or as a defense to an enforcement proceeding initiated by the government or the threat thereof, as is the case herein, the Court must substantively analyze each of the elements of the RFRA case.

**Summary of the Facts**

On September 9th, 2020, Defendant went to the area of Quiobaquito Springs to pray for the spring and for the land. The land in the area of the spring and the spring itself are considered sacred to the O'odham People. Defendant is part of the O'odham Nation and as such she feels a cultural

and religious connection to the spring and to the land the spring in on. Defendant came to the area to pray based on what she considered a desecration of the land by the construction of the wall between the United States and Mexico that was going to resume.

Defendant was praying and singing when she heard the noise of heavy machinery entering the land. Based on this, Defendant stopped praying and singing and ran to where she heard the heavy machinery being operated. Upon seeing the sacred ground and spring being further desecrated, Defendant grabbed a bottle of water and her ceremonial rattle and headed toward the equipment. At this time, Defendant was not aware that the area was closed. Seeing that the heavy equipment was about to start work, Defendant positioned herself in front of one of the vehicles to prevent the further desecration of sacred ground. At this time Defendant made a phone call to have the assigned Cultural Monitor come to the area.

While in this position, Defendant began to pray and sing spiritual/ceremonial songs. She sang every religious song that she could remember. The songs were in honor of the land and the people. At this time Border Patrol and Park Service Officers came on the scene and surrounded Defendant, Defendant was trying to explain to them why she felt compelled to be there due to her religious and cultural ties to the land and the spring. At that time Defendant began to scream out of distress for the land.

The officers came closer to Defendant and were still surrounding her. Again, Defendant tried to explain to the officers that she felt compelled to be there in defense of the land and the spring. The officers then walked Defendant to a National Park Service Van. Defendant told the officers that she was a member of the O'odham Nation. Despite her efforts to tell the officers why she was there, the officers disregarded this and placed Defendant under arrest.

**I.  The RFRA Prima Facie Case.**

**A. Was the Defendant's Acting Based on Beliefs That Are Religious in Nature?**

With respect to the showing required by the party claiming a RFRA exemption, the Defendant must first show with "the evidence of persuasion," 42 U.S.C. § 2000bb-2(3), that she holds a belief that is religious in nature. This showing requires courts to consider the mixed question of whether, objectively, the Defendants's beliefs are "religious" and whether, subjectively, Defendant understood the beliefs to be religious. RFRA covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Burwell v. Hobby Lobby, 573 U.S. ___, 134 S.Ct. 2751, 2762 (2014). RFRA provides protection to a wide diversity of religious practices, including those that differ significantly from the Abrahamic traditions. Thus, a RFRA claimant need not show that they believe in a singular deity, that their faith includes a house of worship, or that they are a member of a recognizable congregation. "This [] inquiry reflects our society's abiding acceptance and tolerance of the unorthodox belief. Indeed, the blessings of our democracy are ensconced in the first amendment's unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience." Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984). "[W]e are a cosmopolitan nation made up of people of almost every conceivable religious preference." Braunfeld v. Brown, 366 U.S. 599, 606 (1961). In considering whether a system of values or beliefs counts as religious for the purposes RFRA and similar federal statutes, courts have looked to several key indicia of "religiosity" that implicate "'deep and imponderable matters' … includ[ing] existential matters, such as humankind's sense of being; teleological matters, such as humankind's purpose in life; and cosmological matters, such as humankind's place in the universe." Cavanaugh v. Bartelt, 178 F. Supp. 3d 819, 829 (D. Neb. 2016),

aff'd (8th Cir. Sept. 7, 2016). Religious beliefs "often prescribe a particular manner of acting, or way of life, that is 'moral' or 'ethical' … [and] may create duties—duties often imposed by some higher power, force, or spirit—that require the 6 believer to abnegate elemental self-interest." United States v. Meyers, 95 F.3d 1475, 1483 (10th Cir. 1996). Religiously motivated actions, such as that asserted by the Defendant herein, can be the kind of faith-based duty that RFRA was designed to protect.

**B. Are Defendant's Religious Beliefs Sincerely Held?**

Second, the RFRA claimant must show that his or her religious beliefs are sincerely held. Hobby Lobby, 134 S.Ct. at 2774 n. 28 ("To qualify for RFRA's protection, an asserted belief must be 'sincere'...."). This element is a question of fact, proven by the credibility of the party asserting a religion-based defense. United States v. Zimmerman, 514 F.3d 851, 854 (9th Cir. 2007) (stating that sincerity is "a question of fact"); Patrick v. LeFevre, 745 F.2d 153, 157 (2nd Cir. 1984) (the sincerity analysis "demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross- examination"); United States v. Quaintance, 608 F.3d 717, 721 (10th Cir. 2010) ("[S]incerity of religious beliefs 'is a factual matter.'"); see generally Kara Loewentheil and Elizabeth Reiner Platt, In Defense of the Sincerity Test, in RELIGIOUS EXEMPTIONS 247 (Kevin Vallier & Michael Weber eds., 2018). Rather than merely reducing this element to a matter of pleading and accepting the RFRA claimants' assertion of sincerity or the government's concession thereto,4 the Court should undertake a meaningful assessment of the factual basis for the claim to sincerity, including examination of the claimants' demeanor, thus rendering this question inappropriate for resolution based only on the pleadings.

As previously explained in this Brief, Defendant's actions were taken based on her sincerely held religious and cultural beliefs.  The Government's closure of that portion of the Organ Pipe National

Monument where Quitobaquito Spring is located posed a substantial burden on Defendant's sincerely held religious beliefs and burdened her practice thereof.

## CONCLUSION

Based on the above, and in the interest of justice, Defendant asks this Court to allow here to present her sincerely held religious beliefs as a defense in her trial on the above numbered matter. She also asks this Court to find that the Government's actions violated the Religious Freedom Restoration Act and were a substantial burden on Defendant's ability to practice and act on those beliefs

RESPECTFULLY SUBMITTED this 1st day of Novembert, 2021

                                         s/Paul Gattone
                                         Paul Gattone
                                         Law Office of Paul Gattone
                                         Appearing for Defendant